**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **MAURICE A BLACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No. 1:25-cv-00245-ALT** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION AND ORDER</u>

Plaintiff Maurice A. Black appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income Benefits (SSI) and Disability Insurance Benefits (DIB). (ECF 1). Black filed his opening brief on September 18, 2025, and the Commissioner filed a response in opposition on February 3, 2026. (ECF 11, 21). Black has not filed a reply brief and the time to do so has now passed. Therefore, the case is ripe for ruling.

For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Black applied for SSI and DIB in October 2022, alleging disability beginning July 1, 2021. (ECF 5 Administrative Record ("AR") at 41).[1]  His claim was initially denied on May 23, 2024, and denied on reconsideration on March 20, 2025. (AR  41, 102, 119-20, 141).  On May 17, 2024, he appeared for a phone hearing before Administrative Law Judge (ALJ) Alice Blackmore. (AR 41, 65). Black was represented by counsel, and vocational expert (VE) Marie

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

Barhydt also appeared. (AR 41, 65). The ALJ issued an unfavorable decision on May 23, 2024, concluding that Black was not disabled because he was capable of performing a significant number of jobs in the national economy. (AR 53-54). Black filed a request for review by the Appeals Council, which denied the request on March 20, 2025 (AR 7-9), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Black filed a complaint in this district court requesting review of the Commissioner's final decision on May 19, 2025. (ECF 1). In this appeal, Black argues the ALJ erred by (1) improperly evaluating the medical opinion evidence and (2) finding Black moderately limited in his ability to concentrate, persist, or maintain pace and failing to provide any proper corresponding limitations. (ECF 11 at 1).

On the date of the Commissioner's final decision, Black was fifty years old (*see* AR 294) and had a 10th grade education and past work as a motor vehicle assembler, industrial truck operator and clean up worker, warehouse laborer, and fast-food shift manager. (AR 52, 356). Black alleges disability due to type II diabetes, left knee replacement, diabetic neuropathy in hands and feet, hypertension, high cholesterol, arthritis in the lower back and legs, post-traumatic stress disorder (PTSD), bipolar disorder, anxiety, and depression. (AR 355).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)

(citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. The Law

Under the Act, a claimant seeking DIB or SSI must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's

3

impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. §§ 404.1520, 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### B. The Commissioner's Final Decision

At step one, the ALJ found Black had not engaged in substantial gainful activity since July 1, 2021, the alleged onset date. (AR 43-44). At step two, the ALJ found that Black had the following severe impairments: degenerative disc disease of the cervical spine; right knee arthralgia; left knee arthralgia; status-post left knee total knee arthroplasty; type II diabetes; neuropathy; major depressive disorder; depression with anxiety, PTSD; and cannabis abuse in long term remission. (AR 44). At step three, the ALJ found Black does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR *Id.*).

The ALJ assigned Black the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except light, the claimant can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can tolerate occasional exposure to vibration. Mentally, the claimant can tolerate occasional interaction with coworkers, supervisors, and the public. The claimant can understand, remember, and carry out simple instructions.

(AR 47).

At step four, the ALJ found Black is "unable to perform any past relevant work." (AR 52). However, at step five the ALJ found that a hypothetical individual of Black's age, education, experience, and RFC could perform a significant number of jobs in the national economy, including router, price marker, and collator operator. (AR 53-54). Thus, Black's applications for SSI and DIB were denied. (AR 54).

### C. Evaluation of Medical Opinions

Plaintiff alleges that the ALJ erred in evaluating the opinions of two state agency reviewers, Drs. Lovko and Unversaw, and the opinion of a consultative examiner, Dr. Neuman, and in finding Dr. Neuman's opinion more persuasive. (ECF 11 at 5-8). Specifically, Plaintiff calls the ALJ's assessment of Drs. Lovko and Unversaw's opinions hypocritical as compared to the assessment of Dr. Neuman's opinion and alleges the ALJ erred in failing to address the supportability and consistency of Drs. Lovko and Unversaw's opinions. (*Id.*).

In the ALJ's assessment of the opinions of Drs. Lovko and Unversaw, the ALJ found the opinions to be unpersuasive. (AR 51). The ALJ explains:

> While the undersigned agrees with their assessment that the claimant is moderately limited in social interaction, their functional limitations are not phrased in vocationally relevant terms rendering them less useful in formulating a residual functional capacity finding. They find the claimant capable of responding to "brief supervision and interactions, [sic] however, neither opinion defines the phrase "brief supervision and interaction" in vocationally relevant terms.

(*Id.*). Later, the ALJ found the opinion of Dr. Neuman to be persuasive. The ALJ explains:

> Dr. Neuman, however, noted that the claimant would work well independently in a setting that allowed him to get his work done without constant supervision. The undersigned finds the opinion of Dr. Neuman to be generally persuasive. Although her conclusions are not phrased in vocationally relevant terms, her clinical findings are consistent with the largely normal findings documented in the record generally. The opinion is also consistent with, and supports, the findings herein that the claimant is capable of carrying out simple instructions and can deal with occasional social interactions.

(*Id.*).

Plaintiff argues that the ALJ is hypocritical in finding Drs. Lovko and Unversaw's opinion unpersuasive for the use of the phrase "brief supervision and interaction" because the phrase is not defined in "vocationally relevant terms." (ECF 11 at 5-6). In making this argument, Plaintiff points out that Dr. Neuman's opinion also lacks "vocationally relevant terms," such as "constant supervision," and provides no functional limitations, yet the ALJ found that to be persuasive. (*Id.*). However, Plaintiff's argument assumes the ALJ arbitrarily chose to value one doctor's opinion over the other without consideration of other factors. This is not the case.

The ALJ explained why she favored Dr. Neuman's opinion. In evaluating Dr. Neuman's opinion, the ALJ notes that Dr. Neuman met with Plaintiff and conducted a psychological examination herself. (AR 51). The findings of that examination are in turn "consistent with the largely normal findings documented in the record generally." (AR 51). By contrast, the ALJ notes that Drs. Lovko and Unversaw never examined Plaintiff. (AR 51). Additionally, the ALJ explains that the functional limits they assigned were inconsistent with their assessments of the Paragraph B criteria. (AR 51). "For instance, both Drs. Lovo [sic] and Unversaw determined that the claimant had a 'mild' limitation in adaption and managing oneself, yet they seemingly included adaptive limitations in their functional assessment noting that the claimant can deal with changes in a routine work setting." (AR 51).

6

In addition to inconsistencies, the ALJ explained that neither doctor provided a meaningful discussion of the medical evidence, so it is unclear what evidence they relied on in their conclusions. (AR 51). ALJs "are subject to only the most minimal of articulation requirements," and the ALJ has met those requirements. *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024); *see also Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (the minimal articulation requirement is "an obligation that extends no further than grounding a decision in substantial evidence" (internal citations omitted)). Thus, although the ALJ notes that both opinions use non-vocational terms, the ALJ considered the substantive differences between the opinions and explained her reasoning in finding Dr. Neuman's persuasive.

Plaintiff also argues the ALJ failed to adopt Drs. Lovko and Unversaw's opinion that he was capable of "making judgments commensurate with functions of simple, repetitive tasks." (ECF 11 at 6-7). Plaintiff states the ALJ erred because "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *Andrews v. Kijakazi*, No. 21-CV-0369-BHL, 2022 WL 17361865, at *2 (E.D. Wis. Nov. 30, 2022) (alterations in original). However, the RFC includes that "[t]he claimant can understand, remember, and carry out simple instructions." (AR 47). This line of the RFC does not conflict with the opinion of Drs. Lovko and Unversaw and Plaintiff does not explain how this is inconsistent with their opinions.

Next, Plaintiff argues that the ALJ failed to follow the set standards for evaluating medical opinions. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Plaintiff correctly states the ALJ must consider supportability and consistency and must explain how she considered these two factors in assessing medical opinions. *Id.* at (b)(2).

7

In terms of supportability, the ALJ noted that Dr. Neuman's opinion was supported by her clinical findings and was consistent with the largely normal findings in the overall record. (AR 51). As to Drs. Lovko and Unversaw's opinion, the ALJ stated, "[i]t is, however, entirely unclear what evidence they relied on as neither doctor provides a meaningful discussion or analysis of the medical evidence." (AR 51). Plaintiff argues this is a mischaracterization of the evidence because the doctors provided their evidence for their opinions in sections titled "PRT Additional Explanation" and "MRFC Additional Explanation" in their assessments. (ECF 11 at 7-8). However, Plaintiff seems to in turn mischaracterize these notes. The ALJ was correct in saying the doctors did not provide analysis. The "PRT Additional Explanation" is little more than a list of conclusions, and the "MRFC Additional Explanation" provides "the claimant's statements and evidence in file does not show same level of severity expressed/alleged." (AR 109, 114). These notes do provide more information, but hardly meaningful discussion or analysis of evidence. The ALJ properly evaluated supportability.

The ALJ also properly evaluated consistency. In evaluating Dr. Neuman's opinion, the ALJ found her opinions were consistent with the largely normal findings in the overall record. (AR 51). As to Drs. Lovko and Unversaw's opinion, the ALJ compared their opinion to Dr. Neuman's as seen in the overall analysis of medical opinions to determine mental health impairments. (*Id.*). Because the ALJ thoroughly explained her reasoning throughout the evaluation of medical opinions, the ALJ properly evaluated the opinions of Drs. Lovko and Unversaw, and Dr. Neuman, and did not err in finding Dr. Neuman's opinion more persuasive.

### D. Concentration, Persistence, and Pace Limitations in the RFC

Plaintiff next argues that after finding Plaintiff moderately limited in his ability to concentrate, persist, or maintain pace, the ALJ failed to provide corresponding limitations. (ECF

11 at 8-9). The RFC includes, "[t]he claimant can understand, remember, and carry out simple instructions." (AR 47). Plaintiff argues this is insufficient to address moderate concentration, persistent, and pace limitations because there is no basis to conclude that they account for problems of concentration, persistence, or pace. (ECF 11 at 8-9); *see Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). In *Crump* the court reasoned that "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis …." *Id.*

However, "[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (collecting cases); *see Johnson v. O'Malley*, No. 4:23-CV-39-GSL, 2024 WL 1327338, at *6 (N.D. Ind. Mar. 27, 2024) ("[C]learly, where the ALJ connects the assessed limitations to evidence supporting those limitations, even vague or generic restrictions to simple work is sufficient."). Here, the ALJ properly connected the moderate limitation to evidence supporting that limitation and then connected that limitation to the RFC.

In her reasoning, the ALJ explains,

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant reportedly has issues maintaining focus and he testified that he has difficulty concentrating. Mental status exams, however, are within normal limits and the *psychological consultative examiner found the claimant's ability to sustain concentration and persistence to be intact*. The lack of significant concentration or attention deficits in the record is consistent with a moderate, not a marked, limitation in this area and supports the finding herein that the claimant is capable of carrying out simple instructions. The limitation also accounts for the claimant's pain symptoms which have some effect on his ability to maintain concentration. Thus, limiting the claimant to simple instructions also accounts for any deficits caused by his physical impairments.

(AR 46 (internal citations omitted) (emphasis added)).

Although the ALJ found an overall moderate limitation in concentration, persistence, and pace, the ALJ explains further what those limitations look like through evidence in the record. For instance, the ALJ acknowledges that Plaintiff testified he has difficulty concentrating but goes on to explain that medical exams were within normal limits. (AR 46). Additionally, the ALJ notes Dr. Neuman found Plaintiff's ability to sustain concentration and persistence to be intact. (AR 46, 579). Because the ALJ notes where Plaintiff's challenges lie--concentration--and where they do not--persistence--the ALJ built a logical bridge to the limitation to simple instructions. The ALJ found this evidence supported the moderate limitation and tailored the RFC to meet Plaintiff's needs, building a logical bridge.

Lastly, Plaintiff has not directed the Court's attention to any evidence that would warrant greater limitations than the limitation to simple instructions in the RFC. *See Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) ("[A]s we have underscored time and again, a claimant bears the burden of proving their disability"). The ALJ properly supported her finding that a limitation to simple instructions was appropriate to account for a moderate limitation in concentration, persistence, and pace given Plaintiff's deficits.

The ALJ was not required to follow "a particular formula or incant magic words" in her analysis. *Garland v. Dai*, 593 U.S. 357, 369 (2021) (citations and quotation marks omitted). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id*. at 358 (citation and quotation marks omitted). Indeed, ALJs "are subject to only the most minimal of articulation requirements." *Warnell,* 97 F.4th at 1053; *see also Morales,* 103 F.4th at 471 (the minimal articulation requirement is "an obligation that

extends no further than grounding a decision in substantial evidence" (internal citation omitted)).

In this case, the ALJ's path of analysis is easily discerned and supported by substantial evidence.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is

DIRECTED to enter a judgment in favor of the Commissioner and against Black.

SO ORDERED.

Entered this 17th day of March 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge